We'll move to the second case for today, United States v. Allen. Mr. Adler? Yes, good morning. May it please the court, Andrew Adler from the Federal Defender's Office on behalf of Alfonso Allen. There was a lot of discussion during that last argument about 404B, but I think in order to understand 404B, we have to understand what's going on in 404A. And as Judge Pryor pointed out, there are three really textual arguments here that compel our reading. That it's the statute of conviction, not the violation that's being modified, and one of them is the were modified. The past tense of that clause were modified under the government's reading. Nobody would be eligible for a sentencing reduction because the Fair Sentencing Act did not modify the statutory penalties for any violation that was committed before August 3, 2010. Let's say I agree with you about that. What difference does it make when we get to subsection B? And we have someone who was charged with a violation of a criminal statute. We know that the statute had its penalties modified by the Fair Sentencing Act. But for this particular defendant, we can say that the statutory penalties that were modified by sections 2 and 3 of the Fair Sentencing Act don't make a difference for him. Your Honor, I don't think Congress would write 404B in a manner that would render the eligibility determination in 404A academic. So I think it's a signal that respectfully the way you're looking at 404B is not correct. I mean, this court has had a lot of 3582C2 experience, and I'm afraid that that sort of approach is infecting the way we're looking at 404B. 404B is not telling district courts to go back in time to the time of sentencing and substitute in the Fair Sentencing Act and leave everything else unaffected. The court does impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act were in effect. It doesn't say as if anything else had changed, only as if sections 2 and 3 of the Fair Sentencing Act were in effect at the time the covered offense was committed. That's the only thing that it directs a district court to look at. We agree. We're not suggesting the court should do anything else. But I think what's happening in the as-if language is that it's simply making the Fair Sentencing Act applicable to a category of defendants to whom it was not originally applicable. And that's why that statute uses the date of commission, not the date of sentencing, because the date of commission is when the penalties are incurred. And so that is why it's using that date to capture everybody who was previously sentenced for a covered offense. If you look at the policy statement in 1B1.10, which governs 3582 proceedings, it's using the date of sentencing and it's explicitly telling courts to go back to the time of sentencing, make a limited substitution to see if the amended guideline range has changed, and leave everything else unaffected. If Congress had wanted to employ that same approach here, it would have presumably done so. Instead, what it's doing is it's telling district courts that they have discretion to impose a reduced sentence for anyone previously sentenced for a covered offense, and they're to do so using the Fair Sentencing Act penalties. Now, that's all that's going on there. We're not challenging the drug quantity findings that were made by a judge. We're just saying that they're irrelevant to eligibility. But, of course, we're not disputing that they can be considered at the discretionary stage under 404B, and district judges can even deny relief on that basis, on that discretionary basis, and that discretionary denial is going to be virtually unreviewable on appeal. So we just think that the quantity comes into play at the discretionary stage, not at the eligibility stage. And, indeed, we think it would be incongruous for Congress to vest so much discretion in sentencing judges under 404B and 404C, only to prevent them from exercising it with respect to a large category of crack offenders who are the intended beneficiaries of the statute. I want to say something else about the Apprendi issue. We think that Apprendi does not come in under 404A if it's the statute of conviction that is being modified there. So it just has no relevance. Drug quantity conduct has no relevance at all. But we do think it comes in under 404B because under 404B, the judge has to calculate the statutory penalties using the Fair Sentencing Act. And we simply see nothing in the statute that is telling courts to calculate those statutory penalties in a manner that would be blatantly unconstitutional. Now, there was some discussion earlier... Given that for these, we don't have a jury finding of very much, would you say that in every case, the defendant has to be sentenced according to whatever the quantity was that you could argue was found by the jury? Say, if it's 50 grand or more, then they would be sentenced on 50 grand? Yes. Is that what you're arguing? Yes. Under 404B, at the discretionary stage, the judge has to calculate the statutory penalties. And we think that that has to be done in a constitutional manner. So therefore, it would only be using the quantity found by a jury by a reasonable doubt. And so here, it's 50 grams or more. So that puts Mr. Allen under B1B, not B1A. So in that case, what in your argument would permit a judge to even look at and consider higher quantities that were found by a judge and not a jury? Or would that remove the discretion of the judge such that they were only permitted to send in someone for, say, 50 grand instead of the higher amount that the judge found earlier? If I understand Your Honor's question, we're acknowledging openly that at the discretionary stage, the judge can consider his earlier judge-found quantities in deciding whether, in his or her discretion, to impose a reduced sentence. We're just saying that the amount found by a jury is what is going to set the statutory penalties for that discretionary determination. But then, in his or her discretion, all sorts of other factors can be considered and relied upon to decide whether a particular individual should or should not receive relief. But I do want to be clear that we don't think that – I guess there was a suggestion earlier that there's no Apprendi problem because the sentence can only go down and not up. And we don't agree with that because we think that Apprendi and Allain in those cases have to come in whenever there is a calculation of statutory penalties. We're not looking at whether the ultimate sentence goes up or down. We're looking at whether the statutory range goes up or down based on judge-found facts. And that's exactly what would happen here. Judge-found facts that would increase the penalty, increase the sentence. A sentence that's already been imposed, and the only purpose of this proceeding is to determine whether to give the defendant a reduced sentence. So it seems to me Apprendi and that line of authority just has no application to this proceeding at all. Your Honor, we're aware of no authority that says that when a court calculates the statutory penalties that it can do so without regard for Allain and Apprendi. No, it already did that. It did that years ago. It did that years ago. Your Honor, it has to do that again today. It's not a new provision. You're not sentencing the person anew. You're sentencing them in the light of different statutory penalties. Your Honor, we agree. You're considering whether to reduce a sentence. That's what the text says. No, we agree. You can reduce the sentence. Right. The sentence can only go down, but the statutory penalties have to be calculated. It's not a de novo sentencing. It's a proceeding to consider whether to reduce a sentence that's already been imposed. That's what the text says. You may impose a reduced sentence. Correct, but to do so – Two minutes remaining. Thank you. To decide whether to impose a reduced sentence, the court has to use the statutory penalties from the Fair Sentencing Act. The court's got to calculate them again. That's happening in the present day. At the very least, Your Honor, we think there would be a significant Sixth Amendment problem if the court were to read 404B that way and under the canon of constitutional avoidance. The statute should not be read that way. Before you finish, why doesn't the Dillon case counsel in the other direction? Yes, because Dillon was concerned only with calculating advisory guidelines under 3582C2, and that is why the Supreme Court found there was no Sixth Amendment problem there. We, of course, agree with that. Here, though, we're talking about statutory penalties, and that is precisely what the Sixth Amendment precedents of the Supreme Court go towards. We just don't see how courts in 2020 are going to be calculating statutory penalties based on judge-found facts. Now, again, that doesn't mean that they're going to conduct… They won't have to. The calculations already occurred. The only thing they're considering is whether to reduce the sentence that's already been imposed. Your Honor, but that has to come in light of the Fair Sentencing Act, which changed the statutory penalties, and we know that from 404A. So a district court under 404B has to say, well, okay, I'm going to decide whether to give him a reduced sentence, but what is the statutory range that I'm looking at here? And to make that determination, he can only use facts that were submitted to the jury and found beyond a reasonable doubt, not judge-found facts. That's not to say that he can't consider those judge-found quantity facts in deciding not to grant a reduction. The judge can say, wow, this person had a lot of quantity, or this would give rise to a disparity, and in my discretion, I don't think it's appropriate. We agree judges can do that. We just do think, however, there would be a serious Sixth Amendment problem to start calculating statutory penalties. And that's happening today because the statute says may impose a reduced sentence. That is occurring today. The imposition of the reduced sentence is happening today in 2020. So I understand Your Honor has maybe a different reading of it, but that's our position. And so I'm trying to think of – I don't think your time has expired. All right. Well, Mr. Adler, I think we understand your argument. You saved five minutes for rebuttal. So let's hear from the government. Good morning. May it please the Court. This is Jonathan Colan from the U.S. Attorney's Office in Miami. Allowing discretionary relief to all pre-2010 crack offenders ignores the specific change that Section 2 of the Fair Sentencing Act provided. And 404A requires for eligibility that the statutory penalties be modified by Section 2. If they weren't modified by Section 2, we believe that the eligibility question in the first instance isn't satisfied. But I want to address the Court's question about whether it really matters whether we do it under 404A or 404B. It's our position that because of that modified by language in 404A, that if the statutory penalties for this defendant's crime weren't affected, then he's not eligible. You could get there, as the Court has been discussing, if you did it through 404B at the discretionary phase and said that being sentenced as if those thresholds applied, his penalties would not be changed, and therefore the 404B provides no relief. But I want to be clear that doing it that way would require a ruling by the Court that even at that discretionary phase under 404B, or whether we call it the discretionary phase or just the 404B phase before we even get to the sentencing discretion, you could say that 404B provides no relief to a defendant whose penalties did not change. It's our position, though, that the more natural textual basis for that ruling still isn't, or at least additionally is found in 404A because 404A defines who is an eligible defendant, who is a covered offense, who is eligible by someone whose penalties were modified by Section 2. Mr. Adler's discussion of, well, but the statute of conviction was changed, not the violation of the statute itself. Our response to that, though, is that the only manner in which Section 2 modified something, the only thing modified by Section 2, which is what the text requires, was the amounts that trigger penalties. The penalty ranges themselves are the same. The only modification that Section 2 created was to the amounts triggering. It didn't change your jury rights. It didn't change apprentice retroactivity. It didn't change anything else but how the judge determines your sentencing facts. The only thing it did was change the amounts, and as this court found in Carter, and as the Fifth Circuit has held in Hedgwood, you should do exactly what was discussed, which is you plug in those amounts and see has anything changed. And for a big-time offender like Mr. Allen, who the amounts that were found, it's been the law of the case, it's been litigated in several venues, it ended up being more than 420 to I think 700-some grams per week of crack. The penalty at that still, as the court looked at it in Brown, as the court looked at it in Means, would still easily qualify under the new 280-gram threshold, which was the one change created by Section 2. And to ignore that would be to ignore. I've got a question on that. It looks like at sentencing, Mr. Allen was found guilty of more than 150 grams of crack, right? That was the guideline. So the jury verdict was 50 grams or more. Go ahead. I'm sorry. I apologize. My phone gave me a notification. I apologize. That's right. So at sentencing, he was sentenced initially based on 150 grams of crack, correct? The indictment stated 50 grams or more, which was the statutory threshold at the time. The finding at sentencing during the original sentencing was over 150 grams, which was the guideline threshold at the time. Right. In subsequent collateral proceedings, I think it was at 2255, the district court made a specific finding of 420 grams to 700-something grams per week, and this court upheld that in denying a certificate of appealability in that 2255 action, repeating that the applicable amount for which he was sentenced or was responsible for was more than 420 grams per week. Well, let's talk about this. So here's my question. Does the decision now, let's suppose that he made it to Subsection B, does the decision now allow the judge to consider the 420 to 784 grams of crack per week, or because at his initial time of sentencing it was 150 grams of crack or more, which one of those should a district court rely on now in considering whether to impose a reduced sentence? The 420 for sure, and there's two different ways of looking at it. Again, depending on whether we're looking at the 404B as still part of whether it provides relief at all or whether we're then looking at the if it does provide relief and the judge is going through the sort of 3553A discretionary factors that would weigh where the judge should or whether the judge should decide in its discretion to grant any relief, assuming it's able to. Should the drug quantity finding for purposes of the guidelines have anything to do with it? It would seem to me that what we have to figure out is what the drug quantity finding was for purposes of a statutory penalty, and I thought that the drug quantity finding for the statutory penalty was the 50 grams. Is that right? Well, that's what the indictment charged, and there was no... When it came time for sentencing, and the question was what is his statutory range, wasn't the drug quantity finding for that purpose that resulted in a mandatory sentence of life imprisonment because of his two prior felony drug convictions? The 50 gram determination? 50 grams were all that was required to get him under B1A, and then with the 851 enhancement, his statutory sentence became a mandatory life sentence under B1A, and the threshold for that at the time was 50 grams. And if the fair sentencing act had been in effect at the time, he would have had a lower statutory penalty, right? If we were doing this as an original sentencing and not a modification, and we were looking at this as fair... No, no, no, I'm not asking that. I'm just asking, assuming everything else is in effect, that drug quantity finding is the finding for statutory purposes, what would his statutory penalty be if the fair sentencing act were in effect? Well, because Alene comes in later, we're actually going to have to do some meat to that question. It doesn't have anything to do with it. Assume everything else is the same. Are we talking about this in 2006? I mean, it actually matters because at the time, pre-Alene, that penalty would have gotten him into B1A, and the judge would have made the mandatory minimum finding necessary pre-Alene that could have gotten him the life penalty. I'm not asking who, Mr. Cohen, I'm not asking who makes that determination. I'm assuming that determination has been made. It's a 50-gram determination, okay? If you're going to sentence him with statutory penalties as if the fair sentencing act were in effect, it would seem to me his statutory penalties changed. No? I don't think so, Your Honor. And the reason is because the findings that got made were the findings that were asked of the court at the time. And the fair sentencing act, as you said, this is not a de novo resentencing, this is a modification. If we're imagining a de novo resentencing, then yes. No, I'm not imagining one. It seems to me you are. So let's assume that the drug quantity finding was made by, it doesn't matter whether it was made by a judge or a jury because we're not having a de novo resentencing, okay? The statutory sentencing drug quantity finding was 50 grams, what was charged in the indictment. His statutory penalties changed. Yes, if we're looking at 50 grams, then yes. His statutory penalties changed to B1B and that would, yes. It seems to me the district court understood it that way, too, because what the district court said was, look, the retroactive change doesn't benefit him because he would still be subject to a goddamn range of 360 months to life. The district court would not have thought that would have been the range. Unless he thought the statutory range had been reduced because we know under 5G 1.1B that, of course, his statutory mandatory sentence of life became his guideline sentence, right? Yes. And we can see that looking at whether the guideline range changes, it's not what determines eligibility. And to the extent the district court did so, that was mistaken. Under 404, what triggers eligibility is whether the statutory penalties change. And it's our position that this defendant, it does not, because you don't look at it as if you're doing this as a resentencing. You're looking at it in terms of a modification where the lien and apprendi Sixth Amendment rights to a jury findings don't preclude looking at the facts. And what this court did in green and it's not clear to me that the district court heard Mr. Cohen because it seems to me that the district court understood that the statutory penalties for this defendant would have changed. But given what his guideline range was, what his sentence actually, what the sentence is that he's serving today, what the district court was determining was, and its discretion was that there's no reason to give this defendant a reduced sentence. Or is that a misreading of it? Do we need to send it back because the district court misunderstood the framework? I don't read it as a discretionary ruling. But I want to go to the point about what the green and Hamilton, what this court did in green and Hamilton, which says that in a modification proceeding, when the question is, can the defendant show, establish his burden of showing eligibility? New findings that weren't necessary at the time can be made. And that's what green and Hamilton have, have provided and that section four or four doesn't change that. The many things that four or four and section two of the current sentencing act don't do is change how this court has said that in a modification proceeding, to the extent that findings weren't necessary at the time, whereas once you find over 150, but we don't know exactly where over 150, because that's what the court did find at the time over 150, but we don't know exactly where. And in green and Hamilton said specifically in such a case, the court can make new findings. And he or the defendant himself, if Alfonso Alva wants to challenge that finding, he can under green and Hamilton. If when we're talking about a disputed or an unclear original finding, like over 150 grams that he could challenge it, but it would be before the district court to clarify what its original finding at sentencing, because it found at sentencing that he was responsible for over 150 grams. It only did so for guideline purposes because it had no statutory meaning at the time, but that was the drug amount finding. The original sentencing drug, sentencing drug amount finding was what over 150 grams and under a four, four B proceeding, the defendant and the government can say, well, what let's look at the record. We can't add to the record. We're stuck by the original record minutes remaining, but you can, but the district court can make a clarifying finding. So long as it's not inconsistent with its original findings as to what the actual drug amount, that finding though, Mr. Cohen, will you agree with me was not being made for purposes of determining his statutory penalty, but only for determining his guideline range. Isn't that right? Because at the time the statute, there was no purpose of the finding anything over 50. Yes. So it made a finding of 150 grams, but those were the facts. Those were the sentencing facts that the district court found at the time, but not for purposes of the statutory penalty. That wasn't the statutory range at the time. No. Okay. And so this court under green and Hamilton can say the district court in determining eligibility can make a clarifying finding to see whether the statutory penalties would be changed, whether the qualifying penalties would have changed based on the amounts found. And because Mr. Allen was not a small time defendant, crack defendant left behind by the fair sentencing act. And it is eminently clear that, that, that what the fit, what the first step back does was provide retroactive relief to the people, the small time crack offenders who were left behind by the fair sentencing act. And because he was not such a defendant, the, there is no relief that is provided for him. And that's how the court, the Supreme court looked at specifically people charged with lower thresholds and Dorsey, but sentenced after endorsed him. We had people specifically charged under the old threshold and sentenced afterwards. And in looking at whether the new fair sentencing act thresholds provided relief for them and Dorsey and this court followed it. And Hines looked at their actual amounts, not those threshold amounts, the statutory threshold. Those were amounts that were for guideline purposes. And the change was to the guidelines. No, no, no. Your honor. I'm sorry. Dorsey and Hines were looking at the effect of the fair sentencing act for those defendants who straddled the effective fate of the act. They were charged. And the only thing that was found was their indictment charge under the old standard, but then they were being sentenced under the new standard. And the court and the, what the Supreme court didn't Dorsey and this court didn't Hines was looked at whether they're the actual amount. It didn't just say, Nope, you were only charged with 50. So you're, you're, you get no relief. It looked at what their actual amounts were in determining how the fair sentencing act affected people charged under the old threshold. And that is what we believe to have to hear is that a defendant charged Mr. Allen, who's case was litigated years before this shouldn't be true. Okay. Someone who is years before the, I'm sorry. Your, your time has expired. We'll we'll, we'll never now hear some rebuttal. Mr. Adler, five minutes. Thank you, your honor. So I think judge prior had a, had a correct observation, which is that the government, not Mr. Allen, it's the government that is unhappy with the findings that sentencing here and are trying to relitigate and make new findings for purposes of, of the section of 404 proceeding. And, and we don't see anywhere in the statute that Congress wants judges to make new findings to determine eligibility. It's a statute of conviction approach for eligibility. All the findings that were previously made throughout this, you know, if that cuts both ways, let's say that cuts both ways. And that, that drug quantity funding for purposes of the statutory penalty has been made. We don't revisit it for good or ill. But it would at least mean that maybe the district court misunderstood what it was doing here. And that Mr. Allen deserves another look because his statutory penalty does change. And he's at least eligible for relief. Doesn't mean that he would get it. That's, that is correct. That is our position that all of the arguments the government is making can be addressed under the discretionary stage under 404 B. But what the government is trying to do is import into the eligibility determination under 404 A all the same procedures that this court has used under 404 3582 C2. And those procedures are simply not applicable here. And that procedure, of course, requires judges to make drug quantity findings or refer back to old drug quantity findings because those findings determine whether the amended guideline range is changed or whether the range has been subsequently lowered by an amendment. That is the procedure that the Sentencing Commission set forth under 1B1.10B1. And if Congress had wanted courts to follow that procedure here, it could have done so. Instead it trusted sentencing judges with doing what they do every day, which is making discretionary and individualized determinations based on the particular facts and circumstances of each individual's case and decide whether this is a person who should or should not. Mr. Adler, Mr. Adler, question for you. If we, this, it's a little too scholastic for me. If, if we go back and, and apply the Fair Sentencing Act, okay, forget about a lien apprendee. He's looking at 10 years to life on the crack, correct? Correct. Okay. So that's a statutory issue now, but he's a career offender. So he's going to get life. So we have to ignore the second step and say, Judge Demetriou, even though you send this man to life and in the sentencing transcript, if you've read it, he says, I don't have the slightest sympathy for you. Judge Ungaro did, but I'm happy to give you life. And, and the guidelines, it's a life offense, right? He's a career offender. He's criminal history category 37. So what are we doing? Just going to have him go back one more time. Is that what you want? Yes, Your Honor. It's not that the guidelines don't change, but they are 360 to life. It's not a mandatory life guideline sentence. It's 360 to life. It doesn't change because the statutory maximum doesn't change. All right. It's 360 to life, but you're, you're already at 360 with your commutation. So, so what are you going to do? Go back there and ask for a variance downward? Correct. We're going to ask for a lower sentence than that. And judge D can say, I think you've already gotten enough. I'm going to exercise my discretion and deny it. So we're, so we're, so we're just to ignore his statements at sentencing where he said, I'm delighted to give you life, which you basically did. And then his later findings where he found, you know half, half a kilo crack a week. So we just pretend that we're going to send it down one more time. And let me ask you this. Aren't you still looking at a 10 year consecutive minimum, minimum mandatory 10 year to life firearm conviction? On the 924 C, I believe so. So we're going to, all right, but we're going to send it down. The guidelines are, you're already at the bottom of the guidelines. And that doesn't even include the 10 years of life consecutive gun count. So we're going to send that back and, and, and in the hopes, I guess that you have the judge Demetrius is going to vary downward. I'm having at least twice already said you're undeserving. Your honor, when he made those comments though, he did not have the benefit of the new statutory penalty of 10 to life. He was looking at a mandatory life penalty when those comments were made and, and your honor may be, may be right that we go back and judge D says, no, I'm, I don't think this person warrants relief or he's already gotten more than he deserves on a discretionary basis. And we're going to ask you this. Couldn't, if we sent that back and you're going to have a de novo sentencing, right? You're going to ask for a variance. You want a de novo sentencing, correct? You're going to, no, no, no. You just want a below guideline sentence, right? A below guideline sentence coming back. Well, we're asking for a reduced sentence. I, we, we wouldn't call it a de novo resentencing, but, but we are, but you call it a variance from the guidelines or a departure, right? Cause the guidelines are, are three 60, right? Before you get the 10 year consecutive tenure to life consecutive gun count, right? I believe that is right. All right. So you're asking to get below the crack guidelines, three 60 on the bottom, and then you got 10 years to life consecutive on top of it. Why couldn't he give you more than the three 60 that the president's commuted you on? Couldn't he, couldn't he very upward? I don't believe so your honor, but that is a risk that, I mean, I think under four or four B he can only go down. But I mean, that is a risk that Allen, of course, Mr. Allen is, is taking here. But, but your honors points are all good ones. I just think that they all have to do with discretion under four or four B and not eligibility under four or four A. All right. Well, it feels like we're, we're assuming an awful lot in your favor to maybe find a technical reason why you want this to go down. All right. Well, your honor, I understand the concern, but this issue does affect a lot of people. So whatever the particular facts and circumstances are for Mr. Allen, I don't, I don't think that should affect the legal rule that the court pronounces here on eligibility. And we appreciate the court's time. And we would just ask for the court to trust sentencing judges to do what they're going to do to vacate that order here and remand for the district court to determine in its discretion, whether Mr. Okay, Mr. Adler. Thank you very much. All right.